# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### EASTERN DIVISION

**BRUCE MURRAY**                                                              **PLAINTIFF**

**v.**                              Case No. **2:18-cv-63 KGB**

**MORRIS MCNUTT, in his**
**individual and official capacities**                                        **DEFENDANT**

## OPINION AND ORDER

Before the Court is the motion for summary judgment filed by defendant Deputy Morris McNutt, in his individual and official capacities (Dkt. No. 12). Plaintiff Bruce Murray filed a response to the motion for summary judgment (Dkt. No. 19), and Deputy McNutt filed a reply to Mr. Murray's response (Dkt. No. 24).

On April 20, 2018, Mr. Murray filed a complaint against Deputy McNutt pursuant to 42 U.S.C. § 1983 and the Arkansas Civil Rights Act of 1993 ("ACRA"), Arkansas Code Annotated §16-123-101, *et seq.*, alleging deprivation of his Fourth and First Amendment rights (Dkt. No. 1, ¶ 1). Mr. Murray also brings claims of conversion of property, false imprisonment, extortion, malicious prosecution, and failure to train (*Id.*, ¶¶ 14-24). Mr. Murray seeks compensatory and punitive damages (*Id.*, at 4). On September 5, 2019, Deputy McNutt filed his motion for summary judgment (Dkt. No. 12). Mr. Murray opposes the motion (Dkt. No. 19).

For the following reasons, the Court dismisses without prejudice Mr. Murray's claims against Deputy McNutt in his official capacity (Dkt. No. 19). The Court grants Deputy McNutt's motion for summary judgment on Mr. Murray's Fourth, First, and Fourteenth Amendment claims pursuant to § 1983 and the ACRA against Deputy McNutt in his individual capacity (Dkt. No. 12). To the extent not addressed in this Order, the Court declines to exercise supplemental jurisdiction

over any of Mr. Murray's remaining state law claims. The Court denies as moot all other outstanding motions, including but not limited to the pending motion *in limine* (Dkt. No. 28).

## I.     Factual Background

Unless otherwise noted, the following facts are taken from Deputy McNutt's statement of material facts not in dispute and Mr. Murray's counter-statement of undisputed material facts (Dkt. Nos. 14, 20).

On or about November 20, 2016, St. Francis County resident Anthony Crippen reported to the St. Francis County Sheriff's Department that his 2011 Ford F250 truck had been stolen (Dkt. No. 14, ¶ 1). The truck was actually registered to Mr. Crippen's mother-in-law, Bernice Parker, because she has better credit than Mr. Crippen (*Id.*). Mr. Crippen made his report of a stolen truck to Kareem Watson, a Deputy with the St. Francis County Sheriff's Department (*Id.*, ¶ 2). Deputy McNutt was not present with Deputy Watson when Mr. Crippen made the report (*Id.*).

On April 28, 2017, Lonoke County Deputy Tim Files and State Police Investigator John Scarlett, both members of the VIPER UNIT, a special unit that investigates vehicle thefts and similar crimes, notified the St. Francis County Sheriff's Department that they had located a Ford F250 pickup truck in St. Francis County that they suspected was stolen (*Id.*, ¶ 3). When Officer Files and Officer Scarlett arrived in St. Francis County on May 1, 2017, St. Francis County Deputy McNutt went with them to the suspected location of the subject truck (*Id.*, ¶ 4). Upon arrival at the scene, the 2011 Ford F250 was located and Officer Files and Officer Scarlett immediately determined, on plain view, that the VIN number plate on the dashboard had been removed and switched out (*Id.*, ¶ 5). The VIN number plate on the dashboard of the 2011 Ford F250 returned to a 1999 Ford F250 (*Id.*, ¶ 6). Upon determining that the dashboard VIN was false, Officer Files and Officer Scarlett physically inspected, on plain view, the VIN number stamped on the frame of

the truck (*Id.*, ¶ 7).  When the officers ran the VIN number found on the frame of the truck, the VIN returned as the same vehicle that Mr. Crippen had reported stolen approximately six months earlier (*Id.*, ¶ 8).  Upon determining that the truck in front of him was the same truck reported stolen by Mr. Crippen six months earlier, Deputy McNutt contacted Mr. Murray to try to get the keys to the truck and advised Mr. Murray that the truck was reported stolen (*Id.*, ¶ 9).

Deputy McNutt asserts that, when Deputy McNutt told Mr. Murray that the truck had been reported stolen, Mr. Murray did not seem surprised and did not voice an objection to Deputy McNutt's confiscation of the truck at that time (*Id.*, ¶ 10).  Deputy McNutt claims that Mr. Murray told Deputy McNutt where the keys were in the truck and gave him the code to open the truck's door (*Id.*).  Mr. Murray denies these allegations, citing to his affidavit (Dkt. Nos. 20, ¶ 10; 19, at 4).  Mr. Murray's affidavit includes no statement that contradicts the representation that Mr. Murray told Deputy McNutt where the keys were in the truck and gave Deputy McNutt the code to open the truck's door (Dkt. No. 19, at 4).  Instead, in his affidavit, Mr. Murray contends that he was surprised when Deputy McNutt approached him *(Id.*).  According to Mr. Murray, he told Deputy McNutt that he bought the truck and did not steal it (*Id.*).

Deputy McNutt maintains that, during that initial phone call with Mr. Murray, Mr. Murray told Deputy McNutt that he paid only $15,000 for the truck but that he did not have a bill of sale (Dkt. No. 14, ¶ 11).  Deputy McNutt asserts, through record evidence, that the value of the truck at the time of this incident was $55,000 and that only Mr. Murray's statement supports Mr. Murray's claim that he paid any money to Mr. Crippen or anyone else in exchange for possession or ownership of the truck before May 2017 (*Id.*).  Although Mr. Murray appears to deny Deputy McNutt's contention that Mr. Murray reported paying $15,000 for the truck and lacked a bill of sale, Mr. Murray cites no record evidence in support of this denial (Dkt. No. 20, ¶ 11).

Mr. Murray further alleges that Deputy McNutt then told him that he would not be charged if he paid Deputy McNutt $800.00 (Dkt. Nos. 1, ¶ 3; 19, at 4). Mr. Murray claims that he refused to pay Deputy McNutt any money, so Deputy McNutt had him charged (Dkt. No. 19, at 4). Deputy McNutt denies making any such demand (Dkt. No. 24, at 2).

After the phone conversation between Mr. Murray and Deputy McNutt, the 2011 Ford F250 was seized and impounded at the St. Francis County Sheriff's Department (Dkt. No. 14, ¶ 12). Deputy McNutt claims that the truck was also painted, altering its appearance, which also indicated to Deputy McNutt that Mr. Murray was aware of the vehicle's status at the time of the vehicle's seizure (*Id.*, ¶ 13). Mr. Murray denies this allegation without any citation to record evidence (Dkt. No. 20, ¶ 11).

All parties agree that, on May 17, 2017, Deputy McNutt swore out an affidavit of probable cause and presented it to Circuit Judge Cristopher Morledge, who issued a warrant of arrest for felony theft by receiving for Mr. Murray on May 18, 2017 (Dkt. Nos. 14, ¶ 14; 20, ¶ 14). On the same day, Mr. Murray surrendered himself on the felony warrant and was released on his own recognizance by the Sheriff (*Id.*, ¶ 15). According to Deputy McNutt, he did not personally effectuate an arrest on Mr. Murray (*Id.*, ¶ 16). Mr. Murray denies this claim without citing record support and alleges that Deputy McNutt caused Mr. Murray to be arrested on a false affidavit because he refused to pay Deputy McNutt (*Id.*). Mr. Murray contends that Deputy McNutt knew the charges were false and attempted to extort Mr. Murray (*Id.*, ¶ 13). Mr. Murray also claims that there was no probable cause because he did not steal the truck and that charges against him were dismissed (*Id.*)

## II.    Standard Of Review

Summary judgment is proper if there is no genuine issue of material fact for trial. *UnitedHealth Group Incorporated v. Executive Risk Specialty Ins. Co.*, 870 F.3d 856, 861 (8th Cir. 2017) (citing Fed. R. Civ. P. 56). Summary judgment is proper if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the defendant is entitled to entry of judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Johnson Regional Medical Ctr. v. Halterman*, 867 F.3d 1013, 1016 (8th Cir. 2017) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). A factual dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party. *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008). "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under the prevailing law." *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989).

However, parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings. *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the nonmoving party to establish that there is a genuine issue to be determined at trial. *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 2008), *cert. denied*, 522 U.S. 1048 (1998). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### III. Discussion

#### A. Uncontested Claims

In his response to Deputy McNutt's motion for summary judgment, Mr. Murray concedes his claims against Deputy McNutt in his official capacity arising under the Fourth and First Amendments (Dkt. No. 19, ¶ 4). These are the only official capacity claims asserted by Mr. Murray. Mr. Murray's claims against Deputy McNutt in his official capacity are essentially claims against St. Francis County, Arkansas, because a claim against a state or municipal official in his or her official capacity is treated as a claim against the entity itself. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Accordingly, the Court dismisses without prejudice Mr. Murray's claims against Deputy McNutt in his official capacity arising under the Fourth and First Amendments.

The only remaining claims before the Court are: (1) Mr. Murray's § 1983 claims against Deputy McNutt in his individual capacity for what Mr. Murray refers to as "Fourth Amendment\DueProcess\Common Law Claims," citing allegations of conversion, false imprisonment, attempted extortion, abuse of process, and malicious prosecution (Dkt. No. 1, at 2), which this Court understands as Fourth Amendment and Fourteenth Amendment claims, (2) Mr. Murray's claim against Deputy McNutt in his individual capacity for First Amendment retaliation, and (3) Mr. Murray's claims that Deputy McNutt violated the Arkansas Constitution and the ACRA.

#### B. Individual Capacity Claims

##### 1. Qualified Immunity Standard

Deputy McNutt claims that he is entitled to qualified immunity in his individual capacity with respect to Mr. Murray's remaining claims (Dkt. Nos. 12, 24). Liability may be imposed against defendants in personal capacity suits even if the violation of a plaintiff's federally protected

right was not attributable to the enforcement of a governmental policy or practice. To establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). Deputy McNutt asserts that he is entitled to qualified immunity.

Mr. Murray presents to this Court an argument that the doctrine of qualified immunity should be modified or reversed, citing cases and other authorities in support (Dkt. No. 21, at 3-6). The Court declines to modify or reverse the doctrine of qualified immunity and instead will apply controlling, established precedent. To overcome the defense of qualified immunity, Mr. Murray must show: (1) that Deputy McNutt violated a statutory or constitutional right and (2) that the right was "clearly established" at the time of the challenged conduct. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Foster v. Mo. Dep't of Health & Senior Servs.*, 736 F.3d 759, 762 (8th Cir. 2013) (quoting *Winslow v. Smith*, 696 F.3d 716, 731 (8th Cir. 2012)). "If the answer to either question is no" then a defendant is entitled to qualified immunity. *Doe v. Flaherty*, 623 F.3d 577, 583 (8th Cir. 2010). The Court may take up these questions in either order. *White v. Jackson*, 865 F.3d 1064, 1074 (8th Cir. 2017); *Foster*, 736 F.3d at 763. "For a right to be clearly established, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *White v. Pauly*, 137 S.Ct. 548, 551 (2017) (citing *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015)). The law is clear if it gives the official "fair warning" that his conduct violated an individual's rights when the officer acted. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

### 2. Malicious Prosecution Claim

As an initial matter, to the extent Mr. Murray contends his complaint should be construed as a § 1983 claim of malicious prosecution separate and apart from his alleged constitutional violations, the Court rejects that contention. The Eighth Circuit Court of Appeals has rejected the

viability of malicious prosecution claims under § 1983 in *Joseph v. Allen*, 712 F.3d 1222 (8th Cir. 2013), and *Kurtz v. City of Shrewsburty*, 245 F.3d 753 (8th Cir. 2001), when on the particular facts of those cases, the plaintiffs could not establish any other underlying constitutional violations.  *See Joseph*, 712 F.3d at 1228 (citing *Kurtz*, 245 F.3d at 758) ("an allegation of malicious prosecution *without more* cannot sustain a civil rights claim under § 1983") (emphasis added); *Brown v. City of Pine Lawn, Missouri*, No. 4:17CV01542 ERW, 2018 WL 950211, at *5 (E.D. Mo. Feb. 20, 2018).  Further, as to such a claim even if based on alleged constitutional violations, the Eighth Circuit has expressed its doubts but has left open the possibility of a malicious prosecution claim under § 1983, as either a Fourth Amendment violation of a substantive right or a procedural due process violation, where plaintiffs have alleged an underlying cognizable constitutional violation. *See, e.g.*, *Bates v. Hadden*, 576 Fed. Appx. 636, 639 (8th Cir. 2014); *Harrington v. City of Council Bluffs, Ia.*, 678 F.3d 676, 679 (8th Cir. 2012) ("If malicious prosecution is a constitutional violation at all, it probably arises under the Fourth Amendment."); *Kurtz*, 245 F.3d at 758; *Gunderson v. Schlueter*, 904 F.2d 407, 409 (8th Cir. 1990) (finding the plaintiff's malicious prosecution claim may be taken as a claim for the violation of procedural due process rights or substantive due process rights).

To the extent Mr. Murray intends to assert malicious prosecution as a state law claim, he fails to do so on the undisputed record evidence before the Court.  "To establish the tort of malicious prosecution in Arkansas, a plaintiff must prove '(1) a proceeding instituted or continued by the defendant against the plaintiff; (2) termination of the proceeding in favor of the plaintiff; (3) absence of probable cause for the proceeding; (4) malice on the part of the defendant; and (5) damages.'"  *Stokes v. S. States Co-op., Inc.*, 651 F.3d 911, 915–16 (8th Cir. 2011) (quoting *Sundeen v. Kroger,* 133 S.W.3d 393, 395 (2003)).  "The requirement that a plaintiff prove the absence of

probable cause and the presence of malice to recover on a claim of malicious prosecution has long been a part of Arkansas jurisprudence." *Stokes*, 651 F.3d at 915-16. Here, for the reasons explained in this Opinion and Order, the Court concludes that, on the undisputed record evidence, no reasonable juror could conclude that probable cause was lacking.

### 3. Fourth Amendment Claim

Deputy McNutt moves for summary judgment on Mr. Murray's claim that he seized Mr. Murray's truck and arrested Mr. Murray, thereby violating Mr. Murray's Fourth Amendment rights (Dkt. No. 12, ¶ 2). In support of this claim, Mr. Murray cites *Soldal v. Cook County*, 506 U.S. 56 (1992), addressing Fourth Amendment claims.[1] Mr. Murray also contends that a malicious prosecution claim under § 1983 can be brought under the Fourth Amendment (Dkt. No. 21, at 1). He alleges that Deputy McNutt lacked probable cause, which supports his malicious prosecution claim (*Id.*). For the reasons discussed below, the Court grants Deputy McNutt's motion for summary judgment on Mr. Murray's Fourth Amendment claim against Deputy McNutt in his individual capacity based on the seizure of the truck and alleged arrest (Dkt. No. 12).

Mr. Murray claims that Deputy McNutt lacked probable cause to seize the truck and have Mr. Murray arrested. The Fourth Amendment is not violated when either the affected party or someone with common authority over the property consents to its search or seizure. *See United States v. Matlock*, 415 U.S. 164, 171 (1974). The Eighth Circuit has found that the Fourth Amendment permits the warrantless seizure of property "when the examination of the property reveals that there was probable cause to believe it was stolen." *PPS, Inc. v. Faulkner Cnty,* 630

---

[1] Mr. Murray, in his response to Deputy McNutt's motion for summary judgment, purports to identify a "*Soldal* claim," without explanation but seemingly in reference to *Soldal*, 506 U.S. at 56. In *Soldal*, the Supreme Court held that "the [Fourth] Amendment protects property as well as privacy." *Id.* In this Opinion and Order, the Court addresses the seizure of Mr. Murray's truck, as well as Mr. Murray's arrest, in the light of Fourth Amendment caselaw consistent with *Soldal*.

F.3d 1098, 1104 (8th Cir. 2011). Similarly, a warrant is valid under the Fourth Amendment if it establishes probable cause. *United States v. Carpenter,* 422 F.3d 738, 744 (8th Cir. 2005). Here, Deputy McNutt seized the truck before obtaining a warrant. He then swore out an affidavit in support of a request for a warrant for the arrest of Mr. Murray, which the Arkansas state court granted.

The Supreme Court's opinion in *Messerschmidt v. Millender* guides this Court's analysis of qualified immunity where an alleged Fourth Amendment violation involves a search or seizure conducted pursuant to a warrant. *Kiesling v. Holladay*, 859 F.3d 529, 533 (8th Cir. 2017) (citing 565 U.S. 535 (2012)). Relying on its earlier decisions in *United States v. Leon*, 468 U.S. 897 (1984), and *Malley v. Briggs*, 475 U.S. 335 (1986), the Supreme Court in *Messerschmidt* recognized that a warrant generally confers a "shield of immunity" to officers acting within the scope of its authority. 565 U.S. at 546-48, 556. As explained by the Supreme Court, "the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner." *Id.* at 546. However, officers are not automatically entitled to qualified immunity because a judge approved a warrant application. *Malley*, 475 U.S. at 345. In *Messerschmidt*, the Supreme Court reiterated the "exception allowing suit. . . where the warrant was 'based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" 565 U.S. at 547 (quoting *Leon*, 468 U.S. at 923). "[T]he threshold for establishing this exception is a high one, and it should be." *Id.; see also Kiesling*, 859 F.3d at 533. Whether an official's conduct was objectively reasonable is a question of law. *Ripson v. Alles*, 21 F.3d 805, 808 (8th Cir. 1994). For these reasons, the Court turns to examine the information before Deputy McNutt at the time he seized the truck and submitted his affidavit in support of the request for a warrant.

At the summary judgment stage, the Court must resolve all factual disputes in favor of the non-moving party. The parties agree that Mr. Crippen reported a 2011 Ford F250 truck stolen on November 20, 2016 (Dkt. No. 20, ¶ 1). Two officers from Lonoke County notified the St. Francis County Sheriff's Department that they had located a Ford F250 truck that they suspected was stolen, and Deputy McNutt accompanied the out-of-county officers to inspect the truck (*Id.*, ¶ 3-4). Upon inspection of the Ford F250, the officers determined that the VIN number plate on the dashboard had been removed and switched; that VIN number plate belonged to a 1999 Ford F250 while the VIN number stamped on the frame of the truck matched the same vehicle that Mr. Crippen reported stolen (*Id.*, ¶ 5-6).

Deputy McNutt claims that Mr. Murray told him that he paid $15,000 for the truck, but Mr. Murray did not have a bill of sale according to Deputy McNutt (*Id.*, ¶ 11). Further, Deputy McNutt asserts that the truck was valued at the time at $55,000 (*Id.*). Although Mr. Murray denies this claim, he admits that he bought the truck from Mr. Crippen (*Id.,* Dkt. No. 19, at 4). Mr. Murray cites no record evidence in support of his denying the assertion that he reported paying $15,000 for the truck or that he lacked a bill of sale. Deputy McNutt also claims that the truck was painted, altering its appearance, which Mr. Murray also denies without any citation to record evidence (Dkt. No. 20, ¶ 11).

Based on this information, Deputy McNutt seized the truck and impounded it at the St. Francis County Sheriff's Department (*Id.,* ¶ 12). The parties agree that on May 17, 2017, Deputy McNutt swore out an affidavit of probable cause and presented it to Circuit Judge Christopher Morledge, who issued a warrant of arrest for felony theft by receiving for Mr. Murray (*Id.*, ¶ 14). Mr. Murray surrendered himself on the felony warrant on May 18, 2017, and was released on his own recognizance by the Sheriff (*Id.*, ¶ 15). Deputy McNutt contends that he did not personally

effectuate the arrest of Mr. Murray; however, Mr. Murray claims that Deputy McNutt caused him to be arrested on a false affidavit because he refused to pay Deputy McNutt money (*Id.*, ¶ 16).

First, the Court determines that, as of the date of the incident, Mr. Murray had a clearly established right "to be free from unreasonable searches and seizures" under the Fourth Amendment. U.S. Const. Amend. 4. However, the Court finds that Mr. Murray's Fourth Amendment right was not violated based on the undisputed record evidence, even when that evidence is construed in the light most favorable to Mr. Murray. A search or seizure is valid under the Fourth Amendment when it is supported by probable cause, which uses a totality-of-the-circumstances analysis. *Illinois v. Gates,* 462 U.S. 213, 233 (1983). Here, Mr. Murray agrees that: (1) Mr. Crippen reported a 2011 Ford F250 stolen, (2) officers in a special unit that investigates vehicle theft notified the St. Francis County Sheriff's Department that they suspected a truck they located to be stolen, (3) Deputy McNutt went with the officers to inspect the truck, (4) the officers determined, on plain view, that the VIN number plate on the dashboard had been removed and switched out and that it matched the VIN number on a 1999 F250, and (5) the officers determined that the VIN number stamped on the frame of the truck matched the vehicle that Mr. Crippen reported stolen six months earlier. Further, in his affidavit, Deputy McNutt explained that, when asked about the truck, Mr. Murray claimed that he had purchased the truck from Mr. Crippen in the amount of $15,000 (Dkt. No. 14-1). "The protests of a resisting arrestee generally do not make an objectively reasonable arrest unreasonable." *Engleman v. Deputy Murray*, 546 F.3d 944, 950 (8th Cir. 2008).

Even if Mr. Murray's allegations about Deputy McNutt demanding money are deemed true for purposes of resolving this motion only, the facts recited here that support probable cause remain undisputed. Further, Fourth Amendment jurisprudence relies on an objective standard that does

not consider as relevant a particular officer's state of mind.  *See Nieves v. Bartlett*, 139 S.Ct. 1715, 1724-25 (2019) (summarizing Fourth Amendment cases rejecting inquiry into an officer's subjective motive or state of mind).

Viewing the evidence in the light most favorable to Mr. Murray, the Court determines as a matter of law that Deputy McNutt's belief that sufficient probable cause existed to seize the truck and apply for a warrant to arrest Mr. Murray was objectively reasonable.  The Court determines that no reasonable juror could conclude otherwise on the undisputed evidence, even when that evidence and all reasonable inferences are construed in favor of Mr. Murray.  As a result, Deputy McNutt is entitled to summary judgment in his favor on Mr. Murray's Fourth Amendment claim with respect to the seizure of the truck and the arrest.

### 4.        First Amendment Claim

Deputy McNutt also moves for qualified immunity and summary judgment on Mr. Murray's First Amendment claim (Dkt. No. 12, ¶ 1-2).  Mr. Murray contends that he has a clearly established right to oppose Deputy McNutt's attempt to seize the truck under the First Amendment (Dkt. No. 1, ¶ 8-9).  Mr. Murray alleges that "he was arrested and prosecuted in retaliation for exercising his First Amendment Right to refuse to be extorted." (Dkt. No. 21, at 1).

At this stage of the proceedings, the Court views all factual disputes in favor of Mr. Murray, the non-moving party.  Although these facts are disputed, Mr. Murray contends that he told Deputy McNutt that he did not steal the truck and that, in response, Deputy McNutt told him that he would not charge him if he paid Deputy McNutt money (Dkt. No. 19, at 4).  Mr. Murray avers that he refused to pay Deputy McNutt any money, so Deputy McNutt charged him (*Id.*).  Deputy McNutt denies demanding money from Mr. Murray (Dkt. No. 24, at 2).  There are genuine issues of material fact in dispute with respect to this claim.  Ordinarily, a non-moving party's own

statements are insufficient to defeat summary judgment at this stage. However, the only record evidence regarding whether Deputy McNutt attempted to extort Mr. Murray is the word of both parties. Mr. Murray says he did, and Deputy McNutt denies that allegation.

The United States Supreme Court in *Nieves v. Bartlett*, 139 S.Ct. 1715 (2019), set forth controlling law that governs this claim. There, plaintiff sued two police officers alleging that they retaliated against him for his protected First Amendment speech by arresting him for disorderly conduct and resisting arrest. *Id.* at 1720. The officers had probable cause to arrest plaintiff, although the criminal charges against the plaintiff were ultimately dismissed. *Id.* at 1720, 1721.

The Court determined that the fact that there was probable cause defeated plaintiff's First Amendment claim as a matter of law, requiring a plaintiff "pressing a retaliatory arrest claim" to "plead and prove the absence of probable cause for the arrest." *Id.* at 1724. When a plaintiff claims that an official took adverse action against him for engaging in protected speech, and the non-retaliatory grounds are insufficient to support the adverse consequences about which plaintiff complains, the plaintiff may generally seek relief by bringing a First Amendment claim. *Id.* at 1722. To prevail on such a claim, however, the plaintiff must establish that the retaliatory motive was the "but-for" cause of his alleged injury, meaning the adverse action against the plaintiff would not have been taken absent the retaliatory motive. *Id.*

The *Nieves* Court recognized an exception to this requirement, determining "that the no-probable-cause requirement should not apply when a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been [arrested]." *Id.* at 1727. Mr. Murray comes forward with no such evidence here.

Further, the *Nieves* Court conceded that in *Lozman v. Riviera Beach*, 585 U.S. —, 138 S.Ct. 1945 (2018), the Court determined that "probable cause does not categorically bar a plaintiff from suing the municipality." *Nieves*, 139 S.Ct. 1722. However, the Court observed that *Lozman* "involved unusual circumstances in which the plaintiff was arrested pursuant to an alleged 'official municipal policy' of retaliation." *Id.* (citing *Lozman*, 138 S.Ct. at 1954). According to the Court, because the facts in *Lozman* were "far afield from the typical retaliatory arrest claim," the Court "reserved judgment on the broader question presented and limited its holding to arrests that result from official policies of retaliation. *Nieves*, 139 S.Ct. at 1722 (citing *Lozman*, 138 S.Ct. at 1953-54). Mr. Murray makes no allegation of an official policy of retaliation here.

Viewing the undisputed record evidence in the light most favorable to Mr. Murray, the Court cannot conclude that a reasonable jury could find probable cause lacking in Deputy McNutt's decision to seize the truck or apply for a warrant for Mr. Murray's arrest. As described above, undisputed facts support Deputy McNutt's decision to seize the truck without a warrant, and Deputy McNutt's warrant application listed facts that are undisputed and sufficient to establish probable cause to arrest Mr. Murray. Because there was probable cause to support seizure of the truck and an arrest of Mr. Murray, and because this is not a case in which an exception to the probable cause requirement has been recognized, the Court grants summary judgment in favor of Deputy McNutt on Mr. Murray's First Amendment claim.

### 5. Fourteenth Amendment Claim

Mr. Murray also claims that Deputy McNutt violated his procedural due process right under the Fourteenth Amendment by seizing the truck and having Mr. Murray arrested. Mr. Murray contends that the threshold question in a due process challenge to purportedly abusive conduct by a state actor is "whether the behavior of the governmental officer is so egregious, so outrageous,

that it may fairly be said to shock the contemporary conscience." *Rogers v. City of Little Rock,* 152 F.3d 790, 797 (8th Cir. 1998) (quoting *Cnty of Sacramento v. Lewis*, 523 U.S. 833, n.8 (1998)). Mr. Murray claims that Deputy McNutt attempted to extort money from him, which was a shocking act and a violation of due process (Dkt. No. 20, at 2-3). Mr. Murray relies on the same disputed facts for his Fourteenth Amendment claim as the disputed facts upon which he relies for his First Amendment claim. For purposes of resolving this motion, the Court views those allegations in the light most favorable to Mr. Murray.

To the extent Mr. Murray intends to allege a procedural due process claim arising from these facts, the Court determines that Mr. Murray fails to allege sufficiently, and fails to carry his burden at the summary judgment stage to proceed to a jury on, such a claim. "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge,* 424 U.S. 319, 332 (1976). "For more than a century the central meaning of procedural due process has been clear: 'Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified.'" *Fuentes v. Shevin,* 407 U.S. 67, 80 (1972) (quoting *Baldwin v. Hale,* 1 Wall. 223, 233, 17 L.Ed. 531 (1863)). "A fundamental requirement of due process is the opportunity to be heard . . . 'at a meaningful time and in a meaningful manner.'" *Armstrong v. Manzo,* 380 U.S. 545, 552 (1965). Nonetheless, "[d]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer,* 408 U.S. 471, 481 (1972). Mr. Murray fails to allege what process he contends he was due but failed to receive, and he presents no record evidence in support of such a claim.

To the extent Mr. Murray intends to allege a substantive due process claim as a constitutional malicious prosecution claim, it is not all together clear that such a claim exists under the Fourteenth Amendment on these facts. As explained, the Eighth Circuit has expressed its doubts but has left open the possibility of a malicious prosecution claim under § 1983, more recently addressing this possibility as arising under the Fourth Amendment with older cases citing the possibility of a substantive or procedural due process violation as the basis for such a claim. *See, e.g.*, *Bates*, 576 Fed. Appx. at 639; *Harrington*, 678 F.3d at 679; *Kurtz*, 245 F.3d at 758; *Gunderson*, 904 F.2d at 409. Having carefully examined controlling precedent, for the following reasons, the Court finds that Deputy McNutt is entitled to qualified immunity on such a claim.

"In the context of substantive due process, an individual must overcome a very heavy burden to show a violation of the Fourteenth Amendment." *Hall v. Ramsey Cnty*, 801 F.3d 912, 917 (8th Cir. 2015). To establish a substantive due process violation, Mr. Murray must demonstrate that a fundamental right was violated and that the conduct shocks the conscience. *Folkerts v. City of Waverly, Ia.*, 707 F.3d 975, 980 (8th Cir. 2013); *Moran v. Clarke,* 296 F.3d 638, 651 (8th Cir. 2002) (en banc) (Bye, J., concurring and writing for a majority on this issue). Whether the alleged conduct shocks the conscience is a question of law. *Terrell v. Larson,* 396 F.3d 975, 981 (8th Cir. 2005) (en banc).

Mr. Murray does not identify what fundamental right he contends was violated by Deputy McNutt's alleged conduct. In support of his Fourteenth Amendment substantive due process claim, Mr. Murray cites *Akins v. Epperly*, 588 F.3d 1178, 1183 (8th Cir. 2009), and *Amrine v. Brooks,* 522 F.3d 823, 833-35 (8th Cir. 2008), both of which involve claims for reckless investigation by law enforcement.

The Eighth Circuit Court of Appeals recognized a substantive due process cause of action for reckless investigation by law enforcement in *Wilson v. Lawrence County, Missouri,* 260 F.3d 946 (8th Cir. 2001), where the Eighth Circuit identified the liberty interest at stake as the "interest in obtaining fair criminal proceedings." *Id.* at 956 n. 8 (citing *Brady v. Maryland,* 373 U.S. 83, 87 (1963)). The test for whether state officers' actions violate this protected liberty interest is whether those actions shock the conscience. *Id.* at 956 (citing *Lewis,* 523 U.S. at 846); *see also Moran,* 296 F.3d at 647 ("[S]ubstantive due process is concerned with violations of personal rights. . . so severe. . . so disproportionate to the need presented, and . . . so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience.") (internal quotations omitted) (quoting *In re Scott Cnty Master Docket,* 672 F.Supp. 1152, 1166 (D. Minn. 1987)). Conduct intended to injure in some way unjustifiable by any government interest will generally rise to the conscience-shocking level, but negligent conduct falls "beneath the threshold of constitutional due process." *Lewis,* 523 U.S. at 849. Deliberate indifference or recklessness falls somewhere between negligent and intentional actions. *Id.* at 849, 851. "Only the most severe violations of individual rights that result from the 'brutal and inhumane abuse of official power' rise to this level." *White v. Smith*, 696 F.3d 740, 757-58 (8th Cir. 2012) (quoting *C.N. Willmar Publ. Schs., Indep. Sch. Dist. No. 347*, 591 F.3d 624, 634 (8th Cir. 2010)).

In *Albright v. Oliver*, a plurality of the Supreme Court held that a state prosecution without probable cause does not violate substantive due process rights. 510 U.S. 266, 273-75 (1994). To the extent Mr. Murray asserts a liberty interest to be free from criminal prosecution except upon probable cause, and in essence alleges the malicious initiation of a baseless criminal prosecution against him, the Supreme Court's holding in *Albright* seems to preclude the assertion of a

substantive due process claim based on malicious prosecution. The *en banc* Eighth Circuit Court of Appeals has explained that, in *Albright*, the Supreme Court declined to decide whether plaintiffs have a Fourth Amendment right against malicious prosecution but did hold that malicious prosecution does not violate the right to substantive due process, because "pretrial deprivations [a]re better addressed under the Fourth Amendment and not substantive due process." *Moran*, 296 F.3d at 646-47 (citing *Albright*, 510 U.S. at 274-75).

The Eighth Circuit's holding and rationale articulated in *Moran v. Clarke* "distinguishes *Albright* and holds the Fourth Amendment does not preclude recognizing a substantive due process violation where law enforcement officers *go beyond mere prosecution without probable cause* and fabricate evidence in order to '*falsely formulate a pretense of probable cause.*'" *Harrington*, 678 F.3d at 680 (emphases added) (quoting *Moran*, 296 F.3d at 647).

Here, Deputy McNutt asserts that Mr. Murray should not be permitted to circumscribe Fourth Amendment jurisprudence through his own self-serving testimony with respect to the allegation that Deputy McNutt demanded money from Mr. Murray. In support, Deputy McNutt cites *Blades v. Schuetzle*, 302 F.3d 801, 805 (8th Cir. 2002). In *Blades*, the Eighth Circuit affirmed the dismissal of plaintiff's racial discrimination claim premised on the Fourteenth Amendment. The *Blades* court determined that, though the words allegedly used were thoroughly offensive, and acknowledged that it was particularly reprehensible for a government official to utter them in the course of his official duties, the use of racially derogatory language, unless it is pervasive or severe enough to amount to racial harassment, will not by itself violate the Fourteenth Amendment. *Blades*, 302 at 805 (citing *DeWalt v. Carter,* 224 F.3d 607, 612 (7th Cir. 2000); *Williams v. Bramer,* 180 F.3d 699, 705-06 (5th Cir. 1999); *cf. Simmons v. O'Brien,* 77 F.3d 1093, 1094 n. 2 (8th Cir. 1996); *Burton v. Livingston,* 791 F.2d 97, 101 n. 1. (8th Cir. 1986); *Black Spotted Horse*

*v. Else,* 767 F.2d 516, 517 (8th Cir. 1985)). This Court previously addressed and rejected Mr. Murray's Fourth Amendment claim.

Mr. Murray cites *Akins* and *Amrine*, both of which involve claims for reckless investigation by law enforcement, in support of his substantive due process claim.[2] In *Akins*, the plaintiff alleged that the defendant police officers failed to conduct an adequate investigation before arresting, charging, and detaining him. 588 F.3d at 1183. The Eighth Circuit held that, to establish a due process violation in this context, a plaintiff must show that a police officer "intentionally or recklessly failed to investigate, thereby shocking the conscience." *Id.* at 1184 (quotation omitted). In reaching this conclusion, the court observed that "the following circumstances indicate reckless or intentional failure to investigate that shocks the conscience: (1) evidence that the state actor attempted to coerce or threaten the defendant, (2) evidence that investigators purposefully ignored evidence suggesting the defendant's innocence, (3) evidence of systematic pressure to implicate the defendant in the face of contrary evidence." *Johnson v. Moody*, 903 F.3d 766, 773 (8th Cir. 2018) (citing *Akins*, 588 F.3d at 1184).

In both *Akins* and *Johnson*, the Eighth Circuit affirmed the grant of qualified immunity in favor of defendants on the Fourteenth Amendment substantive due process claims due to insufficient evidence at the summary judgment stage to demonstrate "conscience shocking" behavior. *Akins*, 588 F.3d at 1184; *Johnson*, 903 F.3d at 773. Further, although the Eighth Circuit

---

[2] Fourteenth Amendment substantive due process claims also have been recognized when public officials engage in high-speed chases. *See Lewis*, 523 U.S. 833; *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461 (8th Cir. 2010). In those cases, courts apply an intent-to-harm standard. *Sitzes*, 606 F.3d at 467-68. In addition, Fourteenth Amendment substantive due process claims have been recognized in certain other instances, not present here. *See, e.g., Hawkins v. Holloway*, 316 F.3d 777 (8th Cir. 2003) (examining level of inappropriate sexual contact necessary to state a substantive due process claim and circumstances surrounding threats to shoot that give rise to a substantive due process claim).

recited the three factors this Court quotes above, the Eighth Circuit did not link the factors with "and" or "or," leaving it unclear exactly what type of evidence is required to state and prevail on a Fourteenth Amendment substantive due process claim under these circumstances.  In support of this list of factors, the Eighth Circuit in *Akins* cited *Amrine*, which involved whether correctional officers should be subject to a claim for segregating an inmate as a result of intentionally or recklessly failing to investigate the inmate's alleged conduct, thereby shocking the conscience. 522 F.3d at 834.  The *Amrine* court also concluded that the facts alleged by the plaintiff were insufficient to make out a claim of reckless investigation.  *Id.*  None of the controlling cases cited by the parties address facts such as the facts presented here involving alleged extortion and the purported representation not to charge if Mr. Murray paid Deputy McNutt money.

"Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White,* 137 S.Ct. at 551 (alterations and internal quotation marks omitted).  "Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct."  *Brosseau v. Haugen,* 543 U.S. 194, 198 (2004) (*per curiam*).  Although Supreme Court "case law does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate."  *White,* 137 S.Ct. at 551 (internal quotation marks omitted).  "In other words, immunity protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (internal quotation marks omitted).  Courts are not to define clearly established law at a high level of generality.  *See Kisela v. Hughes*, 138 S.Ct. 1148, 1152 (2018); *Ashcroft v. al-Kidd,* 563 U.S. 731, 742 (2011).  An officer "cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official

in the defendant's shoes would have understood that he was violating it." *Kisela*, 138 S.Ct. at 1153 (quoting *Plumhoff v. Rickard,* 572 U.S. 765, 778-79 (2014)).

When applying the recognized exception to *Albright* set forth in *Moran*, the Eighth Circuit has indicated that probable cause must be lacking for the case to proceed. *Moran*, 296 F.3d at 647. If probable cause exists for the seizure of the truck and Mr. Murray's arrest, then Deputy McNutt's alleged demand for money to make the charges go away and Mr. Murray's purported refusal to pay the demand were not the sole cause of the actions about which Mr. Murray complains. Further, if a lack of probable cause is required to state a Fourteenth Amendment substantive due process claim in this context, that requirement makes the law for Fourteenth Amendment claims consistent with the law governing First Amendment retaliation claims based on arrest. *See Nieves*, 139 S.Ct. 1715. However, it is unclear if proof of lack of probable cause is required to state a Fourteenth Amendment substantive due process claim on the facts alleged here.

Because the Court can find no case in which an allegation of extortion has been examined in the context of a Fourteenth Amendment substantive due process claim, because the parties cite the Court to none, and more specifically because the Court is unaware of a case decided by the Supreme Court or the Eighth Circuit Court of Appeals that specifies the level of causation required to state such a claim, the Court grants Deputy McNutt qualified immunity on the basis that such a right is not clearly established. If Deputy McNutt engaged in the alleged attempt to extort money from Mr. Murray, his purported conduct was thoroughly offensive and particularly reprehensible for a government official in the course of his official duties. *See Blades*, 302 at 805. However, for the reasons explained, the Court grants Deputy McNutt qualified immunity on Mr. Murray's Fourteenth Amendment claim against him in his individual capacity.

### 6. ACRA Claims

Mr. Murray alleges that Deputy McNutt violated his rights under the Arkansas Constitution and the ACRA. The ACRA explicitly states that, "[w]hen construing this section, a court may look for guidance to state and federal decisions interpreting the Civil Rights Act of 1971, as amended and codified in 42 U.S.C. § 1983 . . . ." Ark. Code Ann. § 16-123-105(c). Arkansas courts have repeatedly looked to and relied upon federal precedent to interpret the ACRA. *See Graham v. Cawthorn,* 427 S.W.3d 34 (Ark. 2013); *Gentry v. Robinson,* 361 S.W.3d 788, 794-800 (Ark. 2009). Thus, claims under the ACRA are construed to be analogous to those under § 1983. Based upon this Court's analysis of the claims under § 1983, the Court grants summary judgment in favor of Deputy McNutt on Mr. Murray's ACRA claims for the reasons set forth in this Opinion and Order.

### IV. Conclusion

For the reasons discussed above, the Court dismisses without prejudice Mr. Murray's claims against Deputy McNutt in his official capacity (Dkt. No. 19). The Court grants Deputy McNutt's motion for summary judgment to the extent it seeks dismissal of Mr. Murray's Fourth, First, and Fourteenth Amendment claims pursuant to § 1983 and the ACRA against Deputy McNutt in his individual capacity (Dkt. No. 12). Having dismissed all of Mr. Murray's federal claims, to the extent this Court has not addressed any of Mr. Murray's remaining state law claims, the Court declines to exercise supplemental jurisdiction over such remaining claims. The Court denies as moot all other outstanding motions, including but not limited to the pending motion *in limine* (Dkt. No. 28).

SO ORDERED this 24th day of October, 2019.

_____
Kristine G. Baker
United States District Judge